**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ISAIAS ALVARADO,

        Plaintiff,

    v.

COLLECT ACCESS, LLC ET AL.,

        Defendants.

Case No. 16-cv-1198 DMS (MDD)

**ORDER (1) DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND (2) DENYING DEFENDANTS' MOTION TO STRIKE**

      Pending before the Court are Defendants Zee Law Group, Tappan Zee, and Kimberly Barrientos's motion to dismiss Plaintiff Isaias Alvarado's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), and motion to strike state law claims pursuant to California Code of Civil Procedure § 425.16. Plaintiff filed a response, and Defendants filed a reply. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part, and Defendants' motion to strike is denied.

**I.**

**BACKGROUND**

      Plaintiff, a member of the United States Navy, is currently stationed in Japan. (SAC ¶¶ 18–19.) Plaintiff has been on active duty since July 16, 1999 to the present. (*Id.* ¶ 19.)

In January 2005, Plaintiff purchased a 2004 Ford Explorer with a loan secured from HSBC Auto Finance ("HSBC"). (SAC ¶ 31.) In February 2007, when Plaintiff fell behind on his payments, HSBC repossessed and sold the vehicle at an auction for $15,080.64. (*Id.* ¶¶ 32–33.) The sale proceeds were not enough to satisfy the outstanding balance. (*Id.* ¶ 33.)

Subsequently, HSBC assigned the deficiency balance to Glass Mountain Capital ("Glass Mountain") for collection. (SAC ¶ 37.) In April 2008, Plaintiff negotiated an agreement with Glass Mountain to settle the alleged debt for a total of $5,600, consisting of an initial payment of $5,000, and six monthly payments of $100. (*Id.* ¶ 38.) Plaintiff made all payments and believed the debt was resolved. (*Id.* ¶ 39.) Glass Mountain, however, did not close Plaintiff's account, nor did it credit the payments to his account. (*Id.* ¶ 54.) Sometime thereafter, Cascade Receivables Management, LLC ("Cascade") purchased Glass Mountain along with all of its rights and liabilities. (*Id.* ¶ 42.) Cascade likewise failed to close Plaintiff's account or to account for the payments made. (*Id.* ¶ 43.)

Cascade later assigned the alleged debt to Collect Access, LLC ("Collect") for collection. (SAC ¶ 48.) Upon acquisition of Plaintiff's account, Collect did not conduct an investigation into the account to verify its accuracy. (*Id.* ¶¶ 52–53.) Thereafter, Collect retained Defendants to initiate a legal action against Plaintiff to collect the alleged debt. (*Id.* ¶ 54.) On January 2, 2009, Collect filed a complaint against Plaintiff in the Superior Court of California, San Diego County, seeking to recover a deficiency balance of $15,080.64, plus interest. (*Id.* ¶¶ 55–56.)

While the state court action was pending, Plaintiff filed a complaint against Defendants in this Court on May 18, 2016. In the complaint, Plaintiff alleges the following five grounds for relief: (1) violation of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, (2) violation of Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788–1788.32, (3) violation of Servicemembers Civil Relief Act ("SCRA"), 50 App. U.S.C. §§ 501–

597b, (4) negligence, and (5) negligence per se.

## II.

## MOTION TO DISMISS

### A.    Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). However, a court need not accept all conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Benson v. Ariz. State Bd. of Dental Exam'rs*, 673 F.2d 272, 275–76 (9th Cir. 1982) (court need not accept conclusory legal assertions). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B.    *Younger* Abstention

Defendants move to dismiss the SAC on the ground that all of Plaintiff's claims are barred by *Younger* abstention. Defendants argue abstention applies because Plaintiff is attempting to circumvent the pending state action by litigating in this Court. Plaintiff responds abstention does not apply because "[t]he matters before the San Diego Superior Court relate only to the adjudication of the alleged debt, not whether Defendants violated federal and state laws in their effort to collect

on the alleged debt." (Opp'n to Mot. at 13.)

*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Younger v. Harris*, 401 U.S. 37, 40–41 (1971). Pursuant to *Younger*, abstention is required when the following four elements are satisfied: (1) "there is an ongoing state judicial proceeding," (2) "those proceedings implicate important state interests," (3) "there is an adequate opportunity in the state proceedings to raise constitutional challenges[,]" and (4) "[t]he requested relief must seek to enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014) (citations and internal quotations marks omitted). *Younger* abstention, however, does not extend to "all parallel state and federal proceedings" that satisfy the four elements, even "where a party could identify a plausibly important state interest." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013). Rather, *Younger* abstention is limited to "only three exceptional categories" of state proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 588 (quoting *New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)); *see Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) ("Though recognizing 'important state interests' in a wide variety of civil proceedings, neither we nor the Supreme Court has held *Younger* to apply generally to ordinary civil litigation.").

Here, Defendants argue abstention is required because three of the four *Younger* elements are satisfied. This is insufficient to warrant abstention. The Ninth Circuit has expressly held abstention under *Younger* is proper "only if all four *Younger* requirements [are] strictly satisfied." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). Indeed, even if the three *Younger* elements are

satisfied, abstention is not appropriate because the last *Younger* element is not satisfied. Plaintiff does not seek to enjoin the pending state action nor does the requested relief have the practical effect of enjoining the pending state action.

Moreover, even if the Court were to find all four *Younger* elements satisfied, abstention is not warranted because the pending state action does not fall within any of the "three exceptional categories" of cases identified in *Sprint* and *NOPSI*. The pending state action is certainly not a state criminal prosecution nor is it a civil enforcement action. It also does not appear to be a civil proceeding involving "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368; *cf. Marshall v. Marshall*, 547 U.S. 293 (2006) (prohibiting federal courts from adjudicating rights that would interfere with the state probate court's administration of a decedent's estate); *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (civil contempt order); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal). Therefore, *Younger* abstention does not apply to the present action. Accordingly, Defendants' motion to dismiss the SAC based on *Younger* abstention is denied.

## C. FDCPA Claim

Defendants move to dismiss the FDCPA claim, contending they are immune from civil liability pursuant to the *Noerr-Pennington* doctrine.[1] Specifically, Defendants argue Plaintiff's "allegations against [them] are a direct result of the judicial proceedings in the State Action, which clearly constitute protected petitioning activity under the *Noerr-Pennington* doctrine." (Mem. of P. & A. in Supp. of Mot. at 19.)

The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment, which protects an individual's right to petition the government for

---

[1] Although Defendants contend "all of [Plaintiff]'s claims against [them] are barred by the *Noerr-Pennington* doctrine," Defendants appear to limit this argument to the FDCPA claim. (Mem. of P. & A. in Supp. of Mot. at 19.)

redress of grievances. *Sosa v. DirecTV*, 437 F.3d 923, 929 (9th Cir. 2006). The *Noerr-Pennington* doctrine provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id*. However, "the First Amendment does not shield lawyers engaged in litigation from FDCPA liability." *Hartman v. Great Seneca Fin. Corp*., 569 F.3d 606, 616 (6th Cir. 2009) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).

The Supreme Court has held the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299. Since *Heintz*, many courts within the Ninth Circuit have declined to apply the *Noerr-Pennington* doctrine to cases similar to the present action. *See*, *e.g.*, *Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-CV-01175-PK, 2016 WL 3176585, at *8 (D. Or. June 2, 2016) ("First Amendment does not confer a right upon debt collectors to petition courts in a manner that violates the FDCPA."); *Applewhite v. Anaya Law Grp.*, No. EDCV1400385JGBSPX, 2015 WL 11438097, at *5 (C.D. Cal. June 15, 2015) (*Noerr-Pennington* doctrine did not bar the FDCPA claim against a law firm acting as a third-party debt collector); *Truong v. Mountain Peaks Fin. Servs., Inc*., No. 3:12-CV-01681-WQH, 2013 WL 485763, at *7 (S.D. Cal. Feb. 5, 2013) ("neither the *Noerr–Pennington* doctrine nor California Civil Code § 47(b) shield Defendant from civil liability under the FDCPA."); *Gerber v. Citigroup, Inc*., No. CIV S07-0785WBSJFMPS, 2009 WL 248094, at *5 (E.D. Cal. Jan. 29, 2009) (*Noerr-Pennington* doctrine does not bar actions against debt collector's attorneys under the FDCPA); *Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Cal. 2000) (debt collector's attorneys were not immune from civil liability under the FDCPA and the California Unfair Business Practices Act by virtue of their participation in administrative or judicial proceedings). In light of these cases, the Court is unpersuaded by Defendants' argument that the *Noerr-Pennington* doctrine bars actions arising under the FDCPA.

Defendant further argues they are not debt collectors, and therefore, they are "immune to FDCPA liability for [their] litigation related communications in the State Action under the *Noerr-Pennington* doctrine[.]" (Mem. of P. & A. in Supp. of Mot. at 10.) In support, Defendant relies on *Satre v. Wells Fargo Bank*, NA, 507 F. App'x 655, 655 (9th Cir. 2013). In *Satre*, the Ninth Circuit in a one page unpublished decision held that "[t]he district court properly determined that [defendant] is immune from FDCPA liability under the *Noerr–Pennington* doctrine because [plaintiffs'] factual allegations in their amended complaint failed to establish that [defendant], who was defending his client from litigation initiated by the Satres, was a 'debt collector.'" *Id.* Contrary to the plaintiffs in *Satre*, Plaintiff here has properly alleged Defendants qualify as debt collectors under the FDCPA. As indicated, "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings meets the [FDCPA's] definition of "debt collector[.]" *Heintz*, 514 U.S. at 291. In the SAC, Plaintiff has alleged "Defendants, each of them, in the ordinary course of business, regularly, … engage in debt collection as defined by California Civil Code § 1788.2(b), and therefore [are] debt collectors as that term is defined by California Civil Code § 1788.2(c)."[2] Therefore, the *Noerr-Penning* doctrine does not shield Defendants from civil liability under the FDCPA. Accordingly, Defendants' motion to dismiss the FDCPA claim is denied.

**D.    RFDCPA Claim**

Defendants move to dismiss the RFDCPA claim against Zee Law Group ("ZLG"), arguing a law firm cannot be a "debt collector" under the RFDCPA. Plaintiff responds that recent cases in the Ninth Circuit have held law firms, as distinguished from individual lawyers, are not exempted from liability under the

---

[2] Under California Civil Code § 1788.2(b) and (c), "debt collection" is defined as "any act or practice in connection with the collection of consumer debts[,]" and "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."

RFDCPA.

As noted, the RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The statute expressly excludes "an attorney or counselor at law." *Id.* The majority of district courts in the Ninth Circuit have refused to exclude law firms from liability under the RFDCPA. *See, e.g., Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1090–92 (E.D. Cal. 2013) (collecting cases and holding RFDCPA applies to law firms); *Do v. Hollins Law, P.C.*, No. 3:13-CV-01322-JSW, 2013 WL 4013659, at *4 (N.D. Cal. Aug. 5, 2013) ("this Court follows *Vo* as well the majority of the federal courts within California that have concluded that the Rosenthal Act does apply to law firms."); *De La Torre v. Legal Recovery Law Office*, No. 12CV2579-LAB WMC, 2013 WL 5462294, at *8 (S.D. Cal. Sept. 30, 2013) ("A law firm that, in the ordinary course of business regularly engages in debt collection can, however be a debt collector [under the RFDCPA]."); *McNichols v. Moore Law Grp.*, No. 11CV1458-WQH-JMA, 2012 WL 667760, at *4 (S.D. Cal. Feb. 28, 2012) (similar); *Thomas v. Loomis-Therrien*, No. 5:14-CV-00979-CAS, 2014 WL 5335913, at *6 (C.D. Cal. Oct. 20, 2014) (similar). The prevailing rationale is that since the legislature specifically excluded attorneys from the RFDCPA but was silent on law firms, and where exceptions to a general rule are specified by statute, other exceptions are not to be implied, it is presumed the legislature did not intend to exclude law firms. The Court finds the reasoning of these courts persuasive and likewise concludes the definition of "debt collector" encompasses law firms for purposes of establishing liability under the RFDCPA.

In support of their motion, Defendants cite *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1526 (Cal. Ct. App. 1988), for the proposition that the exemption extends to law firms. Many district courts, however, have concluded that *Carney* is not a persuasive precedent. *See Vo*, 931 F. Supp. 2d at 1092; *Do*,

2013 WL 4013659, at *4.  In *Carney*, an attorney and a secretary of a law firm falsely represented to the plaintiff that a bench warrant had issued for her arrest and that it would remain in effect until she paid the law firm $1,000 on the underlying debt. *Carney*, 206 Cal. App. 3d at 1513.  The plaintiff brought a suit against the law firm, its secretary, and its attorney, alleging numerous claims, including one violation under the RFDCPA.  *Id.* at 1526.  The court initially noted the RFDCPA specifically exempts attorneys from its coverage.  *Id.*  It then concluded that "the complaint shows on its face that defendant attorney was not a 'debt collector' within the meaning of the Act."  *Id.*  However, the court in *Carney* did not "make clear whether the plaintiff brought a Rosenthal Act claim against the defendant law firm," and "did not explicitly find that the term 'attorney' includes law firms, or even discuss the issue."  *Vo*, 931 F. Supp. 2d at 1092.  Therefore, the Court likewise declines to give weight to *Carney*.

Plaintiff, as previously noted, has alleged ZLG engages in debt collection "in the ordinary course of business, regularly, on behalf of themselves, or others" as defined in California Civil Code § 1788.2(b) and is a "debt collector[] as that term is defined by California Civil Code § 1788.2."  (SAC ¶ 29.)  Because Plaintiff has adequately pleaded that ZLG is a debt collector, ZLG is not exempt from liability under the RFDCPA.  Accordingly, Defendant's motion to dismiss this claim against ZLG is denied.

**E.    SCRA Claim**

Defendants move to dismiss the SCRA claim on grounds that at the time of Defendants' alleged violation of 50 U.S.C. § 3931,[3] the SCRA did not provide a private right of action for damages, and the 2010 amendment to the SCRA, which added a private right of action, 50 U.S.C. § 4042,[4] does not apply retroactively.[5]

---

[3] Formerly 50 App. U.S.C. § 521.
[4] Formerly 50 App. U.S.C. § 4042.
[5] Defendants also contend the SAC fails to state a claim for a violation of 50 U.S.C.

Plaintiff argues that an implied private right of action exists under § 3931, and even if it does not, he is nevertheless entitled to pursue a private right of action because § 4042 applies retroactively.

### i. Private Right of Action Under § 3931

A plaintiff may "bring a cause of action to enforce a federal law if the law provides a private right of action." *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010) (citing *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121 (9th Cir. 2000)). A plaintiff's "ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text." *Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568–77 (1979)).

Plaintiff alleges Defendants violated § 3931(b)(1) when they filed false affidavits, wherein they stated Plaintiff was of "nonmilitary status" and not entitled to the benefits of the SCRA. (SAC ¶¶ 70, 72, 77, 136.) Section 3931 does not by its terms provide a private right of action. Therefore, the Court must determine whether § 3931 provides a private right of action by implication. "[A]n implied right of action is only authorized when there is clear evidence Congress intended such a right to be part of the statute." *Gregoire*, 623 F.3d at 929 (citing *Transamerica Mort. Advisors, Inc. ("TAMA") v. Lewis*, 444 U.S. 11, 23–24 (1979)). "The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *TAMA*, 444 U.S. at 15). Absent such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id*. at 286–87.

---

§ 3953, even though they acknowledge Plaintiff has not alleged such a violation. Therefore, the Court declines to address this argument.

The text of § 3931 reveals no intent on the part of the legislature to provide a private right of action for damages arising from a violation of the statute. The intent of § 3931(b) is to protect servicemembers against default judgments when they fail to make an appearance due to their active duty military status. The language of § 3931(b) "focuses exclusively on the court requiring a plaintiff to file an affidavit informing it of a defendant's military status." *Davis v. Hunt Leibert Jacobson P.C.*, No. 3:12CV1102 (JBA), 2016 WL 2963418, at *9 (D. Conn. May 20, 2016).

Section 3931(b)(1) provides:

> In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit--
> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or
> (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

Section 3931(b) is phrased as a directive to the courts to require the plaintiff to file an affidavit before entering judgment for the plaintiff. As a result, the focus of § 3931(b) is "twice removed from the individuals who will ultimately benefit from" it. *Sandoval*, 532 U.S. at 28; *see California v. Sierra Club*, 451 U.S. 287, 294 (1981) (statutes that focus on the person regulated rather than the individuals protected create "no implication of an intent to confer rights on a particular class of persons.").

Moreover, § 3931 expressly provides a remedy and punishment for a violation of § 3931(b), which further indicates Congress did not intend to allow an additional private remedy for damages. For example, a person who knowingly makes a false affidavit is subject to fines and/or imprisonment. 50 U.S.C. § 3931(c). If a default judgment has been entered against a servicemember during his or her period of military service, the court must, "upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember

to defined the action[.]" *Id.* at § 3931(g). Because § 3931 provides for a remedy or punishment other than private damages, it appears Congress did not intend for private parties to pursue a claim for monetary damages based on a violation of § 3931(b). The Court therefore declines to find an implied right of action in § 3931(b).

### ii. Retroactivity Under § 4042

Effective October 13, 2010, a private right of action for damages, equitable relief, declaratory relief, and attorneys' fees and costs was provided for a violation of § 3931. *See* 50 U.S.C. § 4042(a) & (b). Plaintiff contends Defendants filed false affidavits in the state court on March 18, 2009, September 28, 2009, and June 1, 2010, in violation of § 3931. (SAC ¶ 70.) Because § 4042 was not enacted at the time of Defendants' alleged violation of § 3931, Plaintiff may bring a claim under § 3931 only if § 4042 applies retroactively.

"Statutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (*Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994)). Accordingly, it has become "a rule of general application" that "a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." *United States v. St. Louis, S.F. & T.R. Co.*, 270 U.S. 1, 3 (1926).

In determining whether a statute has retroactive effect, the Supreme Court has stated:

> [Courts should] first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying "our normal rules of construction[.] If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of "affecting substantive rights, liabilities, or duties

[on the basis of] conduct arising before [its] enactment[.] If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

*Fernandez-Vargas*, 548 U.S. at 37 (internal quotation marks and citations omitted).

Here, it is undisputed that § 4042 is silent with respect to retroactivity. The parties' dispute focuses on the second step of the retroactivity analysis, which is whether retroactive application of § 4042 "to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment[.]'" *Fernandez–Vargas*, 548 U.S. at 37 (quoting *Landgraf*, 511 U.S. at 278). Defendants argue their alleged filing of false affidavits occurred prior to the enactment of § 4042, when there was neither a private right of action under § 3931 nor a right to pursue civil damages under California state law. Therefore, Defendants contend allowing Plaintiff to pursue a claim for a violation of § 3931 based on a private right created by § 4042 would have an impermissible retroactive effect by creating additional liability on Defendants.

The only court within the Ninth Circuit to address whether § 4042 is retroactive is *Williams v. U.S. Bank Nat. Assoc.*, No. ED CV12-00748-JLQ, 2013 WL 571844, at *3 (C.D. Cal. Feb. 13, 2013). In *Williams*, the court held that § 4042 does not apply retroactively with respect to § 3931. *Id.* The court noted that at the time of alleged violation of § 3931, the plaintiff did not have relief under California law or § 3931. *Id.* This is because § 3931 did not contain a private right of action prior to the enactment of § 4042, and the "[p]laintiff did not have a right to pursue civil damages under California state law for the filing of the false affidavit because of the absolute litigation privilege[.]" *Id.* at *4. The court found that "[a]llowing Plaintiff to rely on [§ 4042] would therefore have retroactive effect by increasing a party's liability for past conduct." *Id.* Thus, the court held "Congress has not clearly

allowed for such retroactive application[,]" and denied the plaintiff's claim for relief under § 3931. *Id.*

Likewise, in *Davis*, a District Court for the District of Connecticut concluded that § 4042 does not apply retroactively to permit a plaintiff to sue for violation of § 3931. *Davis*, 2016 WL 2963418, at \*6–7. The court reasoned, "Were the Court to apply § 4042 retroactively, … it would make actionable conduct that was protected by the absolute immunity doctrine and not actionable at the time that it occurred, enabling [the plaintiff] to seek monetary damages in relation to a section of a statute that is wholly concerned with affidavit requirements and judicial stays, thus imposing on Defendants 'a new disability in respect to past conduct.'" *Id.* at \*7 (quoting *Landgraf*, 511 U.S. at 283). The Court finds the reasoning of these courts persuasive and similarly concludes § 4042 does not apply retroactively to allow Plaintiff to bring a claim under § 3931. Accordingly, Defendants' motion to dismiss the SCRA claim is granted.

**F.     Negligence and Negligence Per Se Claim**

Defendants contend the claims for negligence and negligence per se should be dismissed because they are barred by the litigation privilege under California Civil Code § 47(b). Specifically, Defendants argue all of the allegations giving rise to these claims occurred in the context of litigation, and therefore, fall within the scope of the privilege. Plaintiff contends his claims are not barred by the litigation privilege because Defendants' threat to contact his commanding officer in order to collect the alleged debt and execution of two levies did not occur during the course of litigation.[6]

The California litigation privilege applies to any publication or broadcast made in any judicial proceeding. Cal. Civ. Code § 47(b). It applies to "'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

---

[6] Plaintiff appears to concede the remaining allegations giving rise to negligence and negligence per se claims fall within the scope of the litigation privilege.

other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 830 (Cal. 2003) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (Cal. 1990)). The purpose of the litigation privilege is to afford "litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213 (citations omitted). The privilege "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. '[I]t is desirable to create an absolute privilege ... not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions.'" *Id*. at 214 (quoting *Thornton v. Rhoden*, 245 Cal. App. 2d 80, 99 (Cal. Ct. App. 1966)). Thus, it "places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." *Id*. (citations omitted).

To accomplish these objectives, the privilege is "an absolute privilege, and it bars all tort causes of action except a claim of malicious prosecution." *Flatley v. Mauro*, 39 Cal. 4th 299, 322 (Cal. 2006) (internal quotation marks and citation omitted). The California Supreme Court has repeatedly held that "the policy of encouraging free access to the courts was so important as to require application of the privilege to torts [beyond] defamation," including "negligence." *Silberg*, 50 Cal. 3d at 215 (citations omitted). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (Cal. Ct. App. 2002) (citing *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (Cal. Ct. App. 1992)).

Plaintiff's negligence and negligence per se claims are based on allegations that Defendants (1) "threatened to call Alvarado's command, and stated that the

Navy would make Alvarado pay and he would suffer consequences from the navy[,]" and (2) placed two levies on Plaintiff's bank account to collect on the allegedly improper state court judgment. (SAC ¶¶ 85, 87, 90, 140.) As currently pleaded, it appears Plaintiff's negligence and negligence per se claims are based on Defendants' actions that occurred in connection with the state court collection proceedings. Both the alleged threat and execution of levies occurred after Defendants obtained a default judgment against Plaintiff in the state action. *See Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1096 (E.D. Cal. 2013) (the litigation privilege even "extends to post-judgment collection activity—even attempts to enforce invalid judgments."); *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 842 (Cal. Ct. App. 1982) ("The privilege attaches even though the publication was made outside a courtroom, as many portions of a 'judicial proceeding' occur outside of open court."). Defendants' actions clearly sought to achieve the objects of the state court action. Therefore, Defendants' alleged wrongful debt collection practices fall within the scope of the privilege. *See Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *10 (N.D. Cal. Dec. 13, 2013) (dismissing negligence claim because "any actions taken by the Attorney Defendants in conjunction with the state court collection proceedings (for example … notice of levy following state court judgment) are protected by the litigation privilege."). Accordingly, the Court grants Defendants' motion to dismiss the negligence and negligence per se claims.

### III.

### MOTION TO STRIKE

#### A.    Legal Standard

California's anti-SLAPP statute is intended to provide a procedural remedy to dispose of lawsuits that are brought to chill or punish an individual's exercise of his or her constitutional rights. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055–56 (Cal. 2006); Cal. Code Civ. P. § 425.16. The statute provides "[a] cause of action against

a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. P. § 425.16(b)(1).  An "act in furtherance of a person's right of petition or free speech" includes: "(1) any written or oral statement or writing made before a ... judicial proceeding ...; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a ... judicial body ...; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  *Id.* at § 425.16(e).

     "A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).  First, "the defendant is required to make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution."  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).  Second, "[t]he burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her ... claim."  *Id.*  If the defendant prevails on a special motion to strike, she or he is "entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. P. § 425.16(c)(1).

/ / /

/ / /

## B.    RFDCPA Claim[7]

Defendants move to strike the RFDCPA claim pursuant to the anti-SLAPP statute.  Defendants' motion to strike is brought on grounds that: (1) the alleged RFDCPA violation arises out of Defendants' actions made in furtherance of its constitutional right to petition, and (2) Plaintiff cannot prevail because ZLG is not a "debt collector" under the RFDCPA.  Plaintiff responds Defendants' actions giving rise to the RFDCPA claim are not protected activities under the anti-SLAPP statute, and in any event, Plaintiff has demonstrated a probability of prevailing on the merits.

The first step in the anti-SLAPP analysis is to determine whether Defendants have made the required threshold showing that the violation of the RFDCPA arises from conduct "in furtherance of [their] right[s] of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]"  Cal. Code Civ. P. § 425.16(b)(1).  "A defendant meets this burden by demonstrating that the [defendant's] act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)."  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (Cal. 2002) (citation omitted).  The Court finds that Defendants have established the RFDCPA claim arises from their actions made in furtherance of its right to petition.

Defendants are alleged to have violated the RFDCPA because they (1) mislead the state court as to the amount of the alleged debt in the complaint, (2) made a false statement to the state court that Plaintiff had been served through substituted service, and (3) made a false statement to the state court that Plaintiff was not in military service.  (SAC ¶¶ 55–63, 65–69, 77–83.)  Defendants' alleged conduct constitutes "communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context [that]

---

[7] Because Defendant's motion to dismiss the negligence and negligence per se claims is granted, the Court declines to address Defendant's motion to strike these claims pursuant to the anti-SLAPP statute.

are per se protected as petitioning activity by the anti-SLAPP statute." *Cabral v. Martins*, 177 Cal. App. 4th 471, 479–80 (Cal. Ct. App. 2009); *see Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (Cal. Ct. App. 2007) ("statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest.") (citing *People v. Birks*, 19 Cal. 4th 108, 115 (Cal. 1998)). Therefore, they constitute protected activities under the anti-SLAPP statute. *See, e.g.*, *Washington v. Richards*, 2011 WL 3564432, *2-3 (S.D. Cal. Aug. 11, 2011) (granting anti-SLAPP motion to strike RFDCPA claim arising out of the filing of a debt collection action); *Scott v. Kelkris Assocs., Inc.*, No. 2:10-1654 WBS DAD, 2010 WL 4393274, at *2 (E.D. Cal. Oct. 29, 2010) (concluding that improper service in the underlying debt collection suit that gave rise to the RFDCPA claim was protected activity under the anti-SLAPP statute).

Because Defendants have satisfied their initial burden of showing the RFDCPA claim arises from their conduct in connection with their free speech rights, the burden shifts to Plaintiff to demonstrate "a probability of prevailing on [his] claim." *Navellier*, 29 Cal. 4th at 88. "[P]laintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id*. at 88–89 (citations omitted). In making its determination, the "court must accept as true all evidence favorable to the plaintiff and assess defendant's evidence only to determine if it bars plaintiff's submissions as a matter of law." *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009) (citing *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699–700 (Cal. Ct. App. 2007)). "[A] cause of action may only be stricken under the anti-SLAPP statute if it arises from protected speech or petitioning activity and lacks even minimal merit." *Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 106 (Cal. Ct. App. 2004) (citing *Navellier*, 29 Cal. 4th at 89).

"[A] defendant may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action or by showing there is a complete defense to the cause of action, and there is nothing in the language of section 425.16 or the case law construing it that suggests one of these avenues is closed to defendants seeking protection from a SLAPP suit." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (Cal. Ct. App. 2005). Defendants contend Plaintiff cannot demonstrate the requisite probability of prevailing on his RFDCPA claim against ZLG because a law firm is excluded from the definition of "debt collectors" under California Civil Code § 1788.2(c). [8] However, as previously discussed, a law firm may be a "debt collector" for purposes of establishing liability under the RFDCPA.

The RFDCPA provides, "No debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected." Cal. Civ. Code § 1788.15(a). Plaintiff alleges Defendants attempted to collect the debt when Plaintiff had not been properly served. Specifically, Plaintiff alleges he was never served because he was on active duty in Japan and Defendants attempted service at an "old address, which the process server was notified of at the time of his attempted service." (SAC ¶ 67.) Nevertheless, Defendants filed a proof of service, stating that Plaintiff had been properly served through substituted service. Accepting as true all evidence favorable to Plaintiff, Plaintiff has demonstrated a reasonable probability of prevailing as required by the second step of the anti-SLAPP analysis. Accordingly, Defendants' motion to strike the RFDCPA claim is denied, and therefore, Defendants are not entitled to recover attorneys' fees and costs incurred in bringing the anti-SLAPP

---

[8] Although Defendants move to strike the RFDCPA claim against all defendants, Defendants do not address whether Plaintiff has demonstrated a probability of prevailing on the claim against Zee or Barrientos.

1  motion.

2  **IV.**

3  **CONCLUSION**

4      For the foregoing reasons, Defendants' motion to dismiss is granted in part

5  and denied in part, and Defendants' motion to strike is denied.[9]  Plaintiff is granted

6  leave to file a Third Amended Complaint ("TAC") that cures the pleading

7  deficiencies identified in this Order.  *See Eminence Capital, LLC v. Aspeon, Inc*.,

8  316 F.3d 1048, 1051 (9th Cir. 2003) ("leave shall be freely given when justice so

9  requires[,]" and "[t]his policy is to be applied with extreme liberality.") (citations

10  and internal quotations omitted).  The TAC shall be filed on or before May 10, 2017.

11  Dated:  April 26, 2017

12                                    Hon. Dana M. Sabraw

13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27  [9] For purposes of the present motion, it is unnecessary for the Court to consider the

28  documents submitted by Defendants in their request for judicial notice.  Defendants' request for judicial notice is therefore denied as moot.